

Villanova University School of Law Digital Repository

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-17-2008

# USA v. Sherman

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3168

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Sherman" (2008). *2008 Decisions.* Paper 527.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/527

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3168

UNITED STATES OF AMERICA

v.

QOUIRTESE SHERMAN,
                                    Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 06-cr-0545
(Honorable Timothy J. Savage)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2008

Before:  SCIRICA, *Chief Judge*, McKEE and SMITH, *Circuit Judges*.

(Filed   September 17, 2008 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Qouirtese Sherman was convicted by a jury of conspiracy to interfere with

interstate commerce by attempted robbery, and obstructing, delaying and affecting

commerce by attempted robbery, 18 U.S.C. § 1951(a); using and carrying a firearm

during a crime of violence, 18 U.S.C. § 924(c)(1); and aiding and abetting the aforementioned crimes, 18 U.S.C. § 2.

Sherman appeals (1) the denial of his motion in limine to suppress physical evidence and (2) the denial of his motion for a downward departure under U.S.S.G. § 5K2.0 and denial of a variance under 18 U.S.C. § 3553(a) based on psychiatric problems. We will affirm.

I.

On the morning of January 8, 2006, Sherman and two accomplices entered the Exxon gas station at 3101 Broad Street in Philadelphia, Pennsylvania. The first time Sherman entered the store, he placed a TastyKake and a bottle of soda on the sales counter. The surveillance video of the first visit was not preserved,[1] but Sherman's fingerprints were on the bottle and TastyKake recovered at the scene. Sherman and his accomplices entered the store a second time approximately twenty minutes later. A surveillance tape shows Sherman forcing his way into the cashier's booth past the attendant, Asim Shazad, and striking Shazad on the head with a gun multiple times.

---

[1]The surveillance equipment was maintained by a private contractor who arrived on the scene two hours after the shooting and helped police preserve the portion of the tape that had recorded the full attempted robbery and shooting. The victim was at the hospital at that time and there is no indication that the police or the private contractor were aware of the first entry or that they might want to preserve a longer span of the surveillance video to record the defendant's first entry into the store. Because the surveillance equipment automatically records over old material approximately every two weeks, the recording of the defendant's earlier entry into the store has been destroyed.

2

Becoming frustrated that neither he nor his accomplice could open the cash register, Sherman fired three shots at Shazad, hitting him in the legs.

## II.

### A.

Sherman contends the video footage of the robbery should not have been admitted into evidence.[2]  Fed. R. Evid. 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  Sherman argues the failure of the police to preserve the portion of the surveillance video depicting Sherman's first entry into the store necessitates the suppression of the entire video. Sherman contends Shazad's testimony about the defendant's first entry into the store bolstered the credibility of Shazad's in-court identification of the defendants, and the lack of the earlier footage impaired Sherman's opportunity to impeach Shazad's credibility.

Fed. R. Evid. 106 codifies the doctrine of completeness, which guards against the potential for evidence to be misleading when taken out of context.  The rule compels admission of additional evidence "if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) ensure a

---

[2]We review for abuse of discretion.  *United States v. Sokolow*, 91 F.3d 396, 402 (3d Cir. 1996).

fair and impartial understanding." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984) (citing *United States v. Martin*, 669 F.2d 73, 84 (2d Cir. 1982)).  In this case, the footage of the defendant entering the store twenty minutes before the crime is not necessary to place the video of the shooting in context.  The footage of the shooting "speaks for" itself – the jury was able to assess the admitted portion of the tape without viewing the earlier footage.

Fed. R. Evid. 106 may counsel exclusion where, for example, the government improperly fails to preserve evidence, preserving only those portions of a writing or recording that are helpful to its case and destroying potentially exculpatory portions.  *See United States v. Yevakpor*, 419 F. Supp. 2d 242, 246-47 (N.D.N.Y. 2006).  The government has a duty to preserve evidence that (1) possesses an apparent exculpatory value, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other available means.  *California v. Trombetta*, 467 U.S. 479, 489 (1984).  If evidence is destroyed, the defendant must prove that the government acted in bad faith.  *Arizona v. Youngsblood*, 488 U.S. 51, 58 (1988).

In this case, there was no bad faith on the part of the Government, as the surveillance video was preserved at a time when neither the police nor the private contractor had reason to believe earlier portions of the tape may have had some evidentiary value.  The evidence was destroyed as a result of the normal functioning of the recording equipment, not a decision by police to delete the tape.  We see no error.

B.

Sherman also appeals the denial of a motion for downward departure under U.S.S.G. § 5K2.0 and denial of a variance under 18 U.S.C. § 3553(a), contending the District Court did not know it had the authority to grant a departure.

If the court based its ruling on a belief that a departure on the grounds proffered by the defendant was legally impermissible, we have jurisdiction. *United States v. Stevens*, 223 F.3d 239, 247 (3d Cir. 2000). If the court exercised its discretion in sentencing with a proper understanding of the law, we lack jurisdiction. *Id.*

At sentencing, the District Court stated:

> I recognize that although the sentencing guidelines are no longer mandatory I must consider them along with all of the factors set forth in 18 United States Code, Section 3553(a). . . . I then must determine the facts appropriate for imposing a reasonable sentence that is either a guideline sentence or a non-guideline sentence. . . . [The defendant] does have a mental health history, albeit not extraordinary enough to merit a downward departure factor. Although I will take that into consideration.

A199-231. The District Court clearly was aware it had the authority to depart downward, and it exercised its discretion in declining to do so. Accordingly, we do not have jurisdiction to review the District Court's decision.

III.

For the foregoing reasons we will affirm the judgment of conviction and sentence.

5